UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DERRICK PAYNE, | Case No.: 11-cv-01328-YGR |
| Plaintiff, | **ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND DENYING PLAINTIFF'S CROSS-MOTION** |
| vs. | |
| ROWENA T. LIBANG, et al., | |
| Defendants. | |

Pending before the Court are cross-motions for partial summary judgment. Plaintiff Derrick Payne ("Plaintiff") originally filed this civil rights action on March 18, 2011, and amended his complaint on July 12, 2011 ("First Amended Complaint" or "FAC"). (Dkt. No. 33.) Plaintiff alleges three claims under 42 U.S.C. section 1983 ("Section 1983") based on: (1) false arrest and imprisonment; (2) malicious prosecution; (3) and abuse of state process. There are seven Defendants in the operative complaint: former deputy city attorney Rowena Libang; Gilbert Jue of the San Francisco Department of Human Services, Family Services Unit; Senior Deputy Luis Castellanos of the San Francisco Sheriff's Department; Sergeant Gary Noda; and Deputy Sheriffs Ronald McConico, Scott Neu, and Jason Tilton.[1]

Defendants filed a Motion for Partial Summary Judgment (First Claim for Relief) on August 21, 2012. (Dkt. No. 85 ("Motion" or "Mot.").) On September 7, 2012, Plaintiff filed a Corrected Opposition to Partial Summary Judgment and Cross-Motion in Support of Partial Summary Adjudication. (Dkt. No. 101-1 ("Opposition" or "Cross-Motion"); *see* Dkt. No. 96 (original Cross-Motion).) Defendants filed their reply in support of their Motion and opposition to Plaintiff's Cross-

---

[1] For the remainder of this Order, the Court will refer to the various Defendants by their last name or rank and last name.

Motion on September 13, 2012.  (Dkt. No. 102 ("Reply").)  Plaintiff filed his reply in support of his

Cross-Motion thereafter.  (Dkt. No. 104 ("Sur-Reply").)  On October 2, 2012, the Court held oral

argument on the Motion and Cross-Motion.  (Dkt. No. 108.)

Having carefully considered the papers submitted and the pleadings in this action, the

arguments of counsel, and for the reasons set forth below, the Court hereby: **GRANTS** Defendants'

Motion for Summary Judgment on the first claim based on qualified immunity of each Defendant; and

**DENIES** Plaintiff's Cross-Motion in its entirety.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff has been involved in a contentious child custody dispute in San Francisco since

October 2008.  (Defs.' No. 1.)[2]  Jue was the assigned case worker.  (*Id.*)  Libang, in her capacity as a

deputy city attorney, represented the Department of Human Services.  (Defs.' No. 2.)  On February

26, 2010, Plaintiff, Libang, and Jue appeared in the San Francisco Superior Court in the custody case

regarding Plaintiff's motion for temporary custody of one of his children.  (Defs.' Nos. 3–4.)

The next day, on February 27, 2010, Jue received at least nine back-to-back voicemail

messages from Plaintiff.  (Defs.' No. 10.)  Jue perceived these messages as threats.[3]  (Declaration of

Gilbert Jue in Support of Defendants' Motion (Dkt. No. 87 ("Jue Decl.")) ¶¶ 3–4.)  At a hearing on

March 15, 2010 ("March 15th Hearing"), Jue sought a temporary restraining order against Plaintiff

(the "TRO").  (Defs.' No. 18.)  After reviewing Jue's showing, the court granted the application and

issued the TRO, prohibiting Plaintiff from coming within one hundred yards of Jue.  (*Id.*)  Plaintiff

was not in the courtroom when the court issued the TRO; he was in the hallway outside the courtroom

---

[2] As used in this Order, "Defs.' No. #" refers to material facts and responses set forth in Plaintiff's Response to Defendants' Separate Statement.  (Dkt. No. 100.)  "Pl.'s No. #" refers to material facts and responses set forth in Defendants' Response to Plaintiff's Separate Statement.  (Dkt. No. 103.)  Unless otherwise noted, the references to the material fact numbers or responses include the evidence supporting the same.

[3] Plaintiff objects to material facts and all evidence related to the reasons for issuance of the TRO against Plaintiff and Defendants' attacks on Plaintiff's "character for his behavior leading to the restraining orders against him."  (Opp. at 18; Sur-Reply at 11.)  The Court finds that such evidence regarding the events underlying the TRO and Plaintiff's conduct in the TRO hearings are not material to issues on summary judgment—unless referenced in this Order or related to Jue's perceptions of the voicemails from Plaintiff (which led him to seek the TRO) and Libang's actions in seeking the TRO at the request of Jue.  While this evidence, as explained above, does not factor into the Court's analysis, Plaintiff's cursory request to "strike" this evidence is **DENIED** as unnecessary.

United States District Court

Northern District of California

being arrested by police officers on a warrant based on the threatening messages.  (Defs.' No. 19; Pl.'s No. 40.)  At that time, Plaintiff had chosen to represent himself, having fired court-appointed counsel.  (Defs.' No. 20; *see* Pl.'s No. 41.)  Plaintiff's "advisory counsel," Mark Wasacz ("Wasacz"), was present in the courtroom during the hearing on the TRO.  (Defs.' No. 21.)

At the March 15th Hearing, the court proposed April 1, 2010 for a hearing on a permanent restraining order.  (Defs.' No. 22.)  Wasacz stated that April 1st was "fine."  (Reporter's Transcript of Proceedings for March 11, 2010 and March 15, 2010 ("March 15th Tr.") at 13, attached as Ex. H (Dkt. No. 98-8) to Declaration of James Birkelund in Support of Cross-Motion ("Birkelund Decl.") and as Ex. B (Dkt. No. 92-3) to Declaration of Rowena Libang in Support of Defendant's Motion ("Libang Decl.").)  Libang had a conflict with April 1st.  (*Id.*)  The court proposed April 5th at 9:30 a.m., which Wasacz again stated was "fine."  (*Id.*)  When no other conflict was raised, the court set the hearing on the restraining order for April 5th and issued the TRO using the Judicial Council of California Form JV-250.  (*See id.*)

The TRO form, as used herein, provides in the first line:

> This temporary order will expire at midnight on (must be within 15 days of the temporary order or, upon a finding of good cause, within 20 days; specify date): [blank space]

(Pl.'s No. 7.)  No date was included in the blank space provided.  (TRO, attached as Ex. A to Birkelund Decl. (Dkt. No. 98-1).)  The TRO also stated on page 3, at the end of the document:

> TO THE PERSON RESTRAINED UNDER A TEMPORARY ORDER
> A court hearing has been set at the time and place *indicated below*.  You may attend this hearing, with or without an attorney, to provide any legal reason that the orders above should not be extended.  If you do not appear at this hearing, the court may *extend* or modify the orders for up to three years without further notice to you.

(TRO at 3 (emphasis supplied).)  Just below this language, the date of April 5, 2010, time of 9:30 a.m., and Department 425 were inserted.  (*Id.*)  Judge Donna Hitchens ("Judge Hitchens") signed the TRO and issued it on March 15, 2010.  Fifteen (15) days from the date of issuance was March 30, 2010.  (Pl.'s No. 8.)  Twenty (20) days from the TRO date of issuance on March 15 was April 4, 2010.  (Pl.'s No. 9.)  April 4th was a Sunday.  Monday, April 5, 2012 was the next business day.

1    Plaintiff knew that a TRO had been issued and knew that the hearing on the permanent restraining

2    order was set for April 5th.  (Defs.' Nos. 26 & 28.)

3         The facts are undisputed that both Plaintiff and Jue were in the cafeteria prior to the hearing

4    on Monday, April 5, 2010 ("April 5th Hearing").  (Defs.' No. 33; Pl.'s Nos. 3–4.)  At the hearing later

5    that morning, Jue, Libang, Plaintiff, and advisory attorney Wasacz were present, among others.

6    (Defs.' No. 35.)  Libang called Jue as a witness.  (Defs.' No. 36.)  Plaintiff cross-examined Jue and

7    asked him if they "cross[ed] paths" that morning.  (Defs.' No. 37 & 38.)  Plaintiff also asked Jue:

8    "You do acknowledge the fact that I was in the same setting with you maybe two feet from you while

9    you were purchasing your coffee?"  (Defs.' No. 38.)  Jue answered: "Right, yes."  Later in the cross-

10   examination, Plaintiff returned to the subject of the encounter in the cafeteria, and stated: "I was

11   standing right next to you."  (Defs.' No. 39.)  During the hearing, Libang asked the court to order that

12   Plaintiff be arrested for violating the TRO, based on Plaintiff's in-court admission that he was

13   standing next to Jue in the cafeteria.  (Defs.' No. 40.)  The court declined to order that Plaintiff be

14   arrested, stating: "I'm not a law enforcement officer, Ms. Libang, and I don't have people arrested.

15   That's not my job."  (Defs.' No. 41.)  At the conclusion of the hearing, the court granted Jue a three-

16   year restraining order.  (Defs.' No. 42.)

17        After the April 5th Hearing concluded, Libang told Senior Deputy Castellanos that the

18   morning cafeteria encounter of Jue and Plaintiff was a violation of the TRO.  (Pl.'s No. 13.)

19   Castellanos had been present during the April 5th Hearing and heard Plaintiff state on the record that

20   he stood next to Jue in the cafeteria that morning.  (Defs.' No. 45.)  Castellanos, upon concluding that

21   Plaintiff had violated the TRO, contacted Sergeant Noda and notified him of Plaintiff's statements.

22   (Pl.'s No. 14; Defs.' No. 46.)  Castellanos informed advisory counsel Wasacz that Plaintiff was not to

23   leave the courtroom.  (*See* Pl.'s No. 15.)  Castellanos instructed Wasacz to ensure that Plaintiff

24   remained in the courtroom until Jue exited the building.  (Declaration of Derrick D. Payne in Support

25   of Plaintiff's Cross-Motion ("Payne Decl.") (Dkt. No. 97) ¶ 17[4]; Declaration of Mark Wasacz in

26

27   [4] Defendants objected to numerous paragraphs of the Payne Decl.  Unless referenced in this Order or
     incorporated into an undisputed fact from the parties' separate statements, the objections are SUSTAINED as
28   immaterial, irrelevant, or unsupported legal conclusions by Plaintiff.  Even if the Court considered Plaintiff's
     statements, they would not change the outcome on summary judgment.

Support of Plaintiff's Opposition to Special Motion to Strike ("Wasacz Decl.") ¶ 7.c, re-submitted in support of Cross-Motion as Ex. J (Dkt. No. 105-2) to Second Declaration of James Birkelund in Support of Cross-Motion ("Second Birkelund Decl.").)

Noda was already familiar with Plaintiff's custody case when Castellanos contacted him after the April 5th Hearing. (Defs.' No. 47.) He was also aware that the court had recently issued the TRO, and he knew the parties were in court that day for the hearing on whether to issue a permanent order. (Defs.' No. 52.) Noda went to Department 425 and spoke with Libang. (Defs.' No. 48.) She told Noda about the hearing and the statements that Plaintiff made on the record about standing near Jue that morning. (Defs.' No. 49; *see* Pl.'s No. 16.) Noda talked to Jue, who described the incident in the cafeteria and stated that he was willing to complete a citizen's arrest form. (Defs.' No. 50.) Noda believed, based on the statements by Jue, Castellanos, and Libang, that probable cause supported arresting Plaintiff for violating the TRO. (Defs.' No. 51; Pl.'s No. 21.) At this time, he had not seen a copy of the TRO, but he had experience with them. (Defs.' No. 53; *see* Pl.'s No. 21.)

Based on the statements of the parties and the circumstances of the hearing, Sergeant Noda decided to place Plaintiff under arrest. (Defs.' No. 55; Pl.'s No. 17.) Noda told Plaintiff that he was under arrest and handcuffed him. (Defs.' No. 56; *see* Pl.'s No. 18.) No warrant had been issued for Plaintiff's arrest. (Pl.'s No. 19.) Plaintiff verbally protested the arrest. (Pl.'s No. 20.) Noda then directed Deputies Neu and Tilton to take Plaintiff to the holding cell and begin the booking process. (Defs.' No. 57; *see* Pl.'s No. 25.) Noda also asked Deputy McConico to assist by collecting a citizen's arrest statement from Jue, which he did. (Defs.' Nos. 59–60; Pl.'s No. 28.)

After Plaintiff was handcuffed, Noda obtained a copy of the TRO and reviewed it. (Defs.' No. 61.) Noda noticed that the expiration date on the TRO was blank. (Defs.' No. 63.) He thought that the date had been left off the form in error. (Defs.' No. 64.) Noda asked the courtroom clerk, Oscar Guandique ("Guandique"), if the TRO was in effect, and Guandique told him that it was. (Defs.' No. 65.)[5] Noda saw that Judge Hitchens was standing in the secure hallway behind the courtroom. He

---

[5] Plaintiff objects to Defs.' Nos. 65–67 as inadmissible hearsay, which consist of "evidence of what Judge Hitchens and the courtroom clerk . . . may or may not have said about the TRO." (Opp. at 18.) These objections are **OVERRULED** and are considered by the Court only with respect to the effect on Noda's conduct. The conversations are not considered for the truth of Guandique or Judge Hitchens' responses that the TRO was in effect.

1   asked Judge Hitchens if the TRO was in effect.  (Defs.' No. 66.)  Judge Hitchens told Noda that the

2   TRO was in effect.  (Defs.' No. 67.)  She explained that the hearing was on Monday, twenty-one days

3   after the TRO issued, because the twentieth day fell on a Sunday.  (*Id.*)  Noda was satisfied that the

4   arrest was in order and directed Deputies Neu and Tilton to take Plaintiff to County Jail for booking.

5   (Defs.' No. 68; Pl.'s No. 32.)

6        Plaintiff filed this lawsuit based upon his arrest after the April 5th Hearing.  By their Motion,

7   Defendants move for summary judgment of the first claim on the grounds that: (i) the TRO was in

8   effect at the time of the arrest; (ii) Defendants had probable cause to believe Plaintiff violated the

9   TRO; (iii) Defendants are entitled to qualified immunity; and (iv) Deputies Neu, Tilton, and

10   McConico are independently not liable because they did not personally participate in the arrest.

11   Plaintiff opposes and cross-moves for summary judgment because: (i) there was no probable cause

12   because TRO was invalid and had expired at the time of the arrest; (ii) Defendants failed to take

13   necessary steps to establish probable cause by failing to review the TRO prior to arresting him; (iii)

14   Plaintiff's arrest was not immediately pursued after the cafeteria incident; and (iv) a citizen's arrest

15   for violation of a TRO requires that the TRO violation actually occurred, which, he contends, did not.

16   **II.   DISCUSSION**

17        **A.   Legal Framework**

18             **1.   Standard for Motion for Summary Judgment Under Fed. R. Civ. P. 56**

19        Summary judgment is appropriate when there is no genuine dispute as to any material

20   fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  A party

21   seeking summary judgment bears the initial burden of informing the court of the basis for its motion,

22   and of identifying those portions of the pleadings, depositions, discovery responses, and affidavits that

23   demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317,

24   323 (1986).  Material facts are those that might affect the outcome of the case.  *Anderson v. Liberty

25   Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The "mere existence of *some* alleged factual dispute between

26   the parties will not defeat an otherwise properly supported motion for summary judgment; the

27   requirement is that there be no *genuine* issue of *material* fact."  *Id.* at 247–48 (dispute as to a material

28

1    fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the non-

2    moving party).

3           Where the moving party will have the burden of proof at trial, it must affirmatively

4    demonstrate that no reasonable trier of fact could find other than for the moving party. *Soremekun v.*

5    *Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). On an issue where the non-moving party will

6    bear the burden of proof at trial, the moving party can prevail merely by pointing out to the district

7    court that the non-moving party lacks evidence to support its case. *Id.* If the moving party meets its

8    initial burden, the opposing party must then set out "specific facts" showing a genuine issue for trial

9    in order to defeat the motion. *Id.* (quoting *Anderson*, 477 U.S. at 250). The opposing party's

10   evidence must be more than "merely colorable" but must be "significantly probative." *Id.* at 249–50.

11   Further, that party may not rest upon mere allegations or denials of the adverse party's evidence, but

12   instead must produce admissible evidence that shows a genuine issue of material fact exists for trial.

13   *Nissan Fire & Marine Ins. Co. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102–03 (9th Cir. 2000); *Nelson v.*

14   *Pima Cmty. College Dist.*, 83 F.3d 1075, 1081–1082 (9th Cir. 1996) ("mere allegation and speculation

15   do not create a factual dispute"); *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 922 (9th

16   Cir. 2001) ("conclusory allegations unsupported by factual data are insufficient to defeat [defendants']

17   summary judgment motion").

18          When deciding a summary judgment motion, a court must view the evidence in the light most

19   favorable to the non-moving party and draw all justifiable inferences in its favor. *Anderson*, 477 U.S.

20   at 255; *Hunt v. City of Los Angeles*, 638 F.3d 703, 709 (9th Cir. 2011). However, in determining

21   whether to grant or deny summary judgment, it is not a court's task "to scour the record in search of a

22   genuine issue of triable fact." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (internal

23   quotations omitted). Rather, a court is entitled to "rely on the nonmoving party to identify with

24   reasonable particularity the evidence that precludes summary judgment." *See id.*; *Carmen v. San*

25   *Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001) ("The district court need not

26   examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set

27   forth in the opposing papers with adequate references so that it could conveniently be found.")

28

United States District Court

Northern District of California

7

United States District Court
Northern District of California

### 2.       Plaintiff's Claim at Issue

Plaintiff's first claim for false arrest and imprisonment under Section 1983 is premised on an alleged violation of the Fourth Amendment.  (Cross-Motion at 5.)  Title 42 U.S.C. section 1983 states that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Here, Plaintiff asserts that his right to be free from unreasonable search and seizure was violated because the TRO was invalid and Defendants failed to take necessary steps to establish probable cause, therefore no probable cause existed for his arrest.  (Cross-Motion at 5–6.)

Defendants argue Plaintiff's Fourth Amendment rights were not violated because probable cause for Plaintiff's arrest existed and, even if the TRO was not valid, they are entitled to qualified immunity.  (Mot. at 11.)  Jue and Libang admit they were acting within the course and scope of their employment when they appeared in Department 425 for the April 5th Hearing on the restraining order.  (Pl.'s Nos. 33 & 34.)  Defendants Castellanos, Noda, Neu, Tilton, and McConico (collectively, "Sheriff Defendants") admit that they were acting within the course and scope of their employment when they were involved in the events related to Plaintiff's arrest on April 5, 2010.  (Pl.'s No. 35.)

### 3.       Doctrine of Qualified Immunity

The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Qualified immunity is "*immunity from suit* rather than a mere defense to liability."  *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).  "An officer will be denied qualified immunity in a [section] 1983 action only if (1) the facts alleged, taken in the light most favorable to the party asserting injury, show that the officer's conduct violated a constitutional right, and (2) the right at issue was clearly established at the time of the incident such that a reasonable officer would have understood [his or] her conduct to be unlawful in that situation."  *Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir.

2011) (citing *Saucier v. Katz*, 533 U.S. 194, 201–02 (2001), *abrogated in part on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009)); *see Brosseau v. Haugen*, 543 U.S. 194, 199 (2004) ("The relevant, *dispositive inquiry* in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.") (emphasis supplied) (internal citations omitted).  The Court has the discretion to decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."[6]  *Pearson,* 555 U.S. at 236.

"[I]n resolving a motion for summary judgment based on qualified immunity, a court must carefully examine the specific factual allegations against each individual defendant (as viewed in a light most favorable to the plaintiff)."  *Cunningham v. Gates*, 229 F.3d 1271, 1287 (9th Cir. 2000) (proper analysis is to "examine[] each defendant's claim of qualified immunity on the basis of undisputed facts concerning the relevant specific conduct").  An officer may be liable for conduct where there has been "integral participation . . . in the alleged constitutional violation."  *Torres v. City of Los Angeles*, 548 F.3d 1197, 1206 (9th Cir. 2008) (quoting *Chuman v. Wright*, 76 F.3d 292, 294–95 (9th Cir. 1996)).  Integral participation requires "some fundamental involvement in the conduct that allegedly caused the violation."  *Blankenhorn v. City of Orange*, 485 F.3d 463, 481 n.12 (9th Cir. 2007).   The Ninth Circuit has rejected the "team effort" standard that allows a jury to consider defendants' conduct together; the proper measure is "to base each individual's liability on his own conduct."  *Hopkins v. Bonvicino*, 573 F.3d 752, 769–70 (9th Cir. 2009) ("integral participation" requires "more participation" than where officer interviewed a witness, did not participate in the unconstitutional search, and had conversations with officers who did conduct the search) (citing *Chuman*).

"Determining the reasonableness of an officer's actions is a highly fact-intensive task for which there are no per se rules."  *Torres v. City of Madera*, 648 F.3d at 1124.  Recognizing that police

---

[6] To be clearly established, a right must be sufficiently clear such "that every 'reasonable official would [have understood] that what he is doing violates that right.'"  *Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012) (alteration in original) (quoting *Ashcroft v. al-Kidd*, 563 U.S. ---, 131 S. Ct. 2074, 2078 (2011)).  "[E]xisting precedent must have placed the statutory or constitutional question beyond debate."  *Ashcroft*, 131 S. Ct. at 2083.

United States District Court

Northern District of California

United States District Court
Northern District of California

officer's judgments are sometimes informed by errors in perception of the actual surrounding facts, the reasonableness of an officer's actions are not judged "with the 20/20 vision of hindsight." *Graham v. Connor,* 490 U.S. 386, 396 (1989); *see Hunter v. Bryant*, 502 U.S. 224, 228 (1991) (court should ask whether defendant "acted reasonably under settled law in the circumstances, not whether another reasonable, or more reasonable, interpretation of the events can be construed . . . after the fact").

**B.      Application of Doctrine of Qualified Immunity**

**1.      Summary of Argument**

Defendants seek summary judgment on the basis that each Defendant acted reasonably under the circumstances and therefore qualified immunity provides immunity from suit.  Specifically, it was reasonable for Jue to believe the TRO was still in effect on April 5th and to pursue Plaintiff's arrest for violation of the TRO.  (Mot. at 16.)    As to Libang, Defendants argue that it was reasonable to believe that the TRO was still in effect, in light of the colloquy in scheduling the April 5th Hearing and that neither the court nor any party stated or suggested that the TRO would lapse before the hearing.  (*Id.*)  Finally, Sheriff Defendants acted reasonably under the circumstances because: (i) Castellanos heard Plaintiff's statements during the April 5th Hearing; (ii) Castellanos and Noda both had experience with TROs; (iii) Noda investigated the TRO by speaking with Castellanos, Libang, Jue, Guandique, and Judge Hitchens; and (iv) Neu, Tilton, and McConico merely assisted with matters incidental to the arrest at the direction of Noda, a superior officer.  (Mot. at 17–18.)  To the extent that any Defendant had experience with TROs prior to April 5th, Defendants argue that experience is a fact to consider in determining whether their conduct was objectively reasonable.

By contrast, Plaintiff asserts that the "clearly established" right here is that "an individual cannot be arrested for violating a TRO unless (1) it is facially valid and unambiguous and (2) the alleged offense is immediately pursued."  (Opp. at 15.)  He contends it was clear at the time of his arrest that the Sheriff Defendants were required to find independent probable cause before effectuating a citizen's arrest rather than relying solely on Libang or Jue's statements.  (Opp. at 9; *see Bolbol v. City of Daly City*, 754 F. Supp. 2d 1095, 1112 (N.D. Cal. 2010).  Moreover, "Defendants as public officials and trained professionals were all on fair notice by the law that conspiring and

1    arresting [Plaintiff] – based on this faulty TRO and long after the alleged violation – was

2    unconstitutional."  (Opp. at 15.)

3        ## 2.    Probable Cause

4            "Under California law, an officer has probable cause for a warrantless arrest 'if the

5    facts known to him would lead a [person] of ordinary care and prudence to believe and

6    conscientiously entertain an honest and strong suspicion that the person is guilty of a crime.'"  *Peng v.*

7    *Mei Chin Penghu*, 335 F.3d 970, 976 (9th Cir. 2003) (alteration in original) (quoting *People v. Adams*,

8    175 Cal. App. 3d 855, 861 (Cal. Ct. App. 1985).)[7]  In the Ninth Circuit, "[p]robable cause to arrest

9    exists when officers have knowledge or reasonably trustworthy information sufficient to lead a person

10   of reasonable caution to believe that an offense has been or is being committed by the person being

11   arrested."  *Torres v. City of Los Angeles*, 548 F.3d at 1206 (quoting *United States v. Lopez*, 482 F.3d

12   1067, 1072 (9th Cir. 2007)); *see Peng*, 335 F.3d at 976 (probable cause analysis takes into account the

13   totality of circumstances known to the arresting officers).

14           "[O]fficers may not solely rely on the claim of a citizen witness that [s]he was the victim of a

15   crime, but must independently investigate the basis of the witness' knowledge or interview other

16   witnesses."  *Hopkins*, 573 F.3d at 767 (alteration in original) (internal citations omitted).  In *Hopkins*,

17   "the officers obtained no information whatsoever beyond [the witness'] brief statement" and entered

18   plaintiff's home based solely on information they received from the witness; they did not do any

19   inspection, and did not ask her any questions in order to gain information beyond her "cursory or

20   conclusory statements."  *Id.*  By contrast, in *Fuller v. M.G. Jewelry*, the Ninth Circuit held that a

21   "sufficient investigation" was conducted where officers questioned a store employee, a witness, the

22   plaintiffs, and plaintiffs' companion.  950 F.2d 1437, 1444 (9th Cir. 1991) (while agreeing that police

23   officers have a duty to conduct an investigation into the basis of the witness' report, court held that

24   officers' belief there was probable cause to arrest was reasonable based on investigation performed).

---

[7] Probable cause is measured by an objective rather than subjective standard, and depends on all of the surrounding facts.  *Johnson v. Lewis*, 120 Cal. App. 4th 443, 454 (Cal. Ct. App. 2004) (citing *People v. Rodriguez,* 53 Cal. App. 4th 1250, 1266 (Cal. Ct. App. 1997)); *People v. Mower*, 28 Cal. 4th 457, 469 (2002). Where an officer has probable cause to make an arrest, the court will not inquire into his subjective motivations.  *Johnson*, 120 Cal. App. 4th at 454.

United States District Court

Northern District of California

Plaintiff relies on *Beier v. City of Lewiston* for the proposition that "it is not objectively reasonable for a law enforcement officer to enforce the terms of a protection order without having first familiarized himself with the order's precise contents through some official source, and any reasonably competent officer would have done so."  (Opp. at 11 (citing *Beier*, 354 F.3d 1058, 1069 (9th Cir. 2004)).)  In *Beier*, a wife had a restraining order against her husband, which prohibited him from coming with 300 feet of her at her residence or workplace.  *Beier*, 354 F.3d at 1061.  The wife called the police while at church to inform them that her husband was violating the restraining order.  *Id.* at 1062.  She spoke directly to an officer with whom she had previously spoken about the process for obtaining a restraining order.  This officer confirmed the issuance of the protection order, but did not request information about the order's terms.  *Id.*  The husband was arrested prior to any officer reading the restraining order—which the wife had in her possession at the church—and despite the husband's requests that the officers read the order.  *Id.*  In determining whether the husband's conduct at church, as reasonably perceived by the officers, violated any provision of the restraining order, the Ninth Circuit found that there was "no viable reading of the order pursuant to which Beier was in violation" and "[t]he officers therefore had no objective basis to arrest [him] for violating the protection order."  *Id.* at 1068.  "Law enforcement officers who act to enforce such a protection order therefore have a responsibility to familiarize themselves with the order's precise contents through some official source.  A police officer who does not personally read such an order, for example, may fulfill his duty by obtaining information from authorized personnel—such as a supervisor or police dispatcher—who have access to the terms of the order."  *Id.* at 1069.  In addition, "law enforcement officers, not ordinary citizens, are charged with enforcing the law, and cannot reasonably do so if they make no attempt to ascertain the applicable prohibitions."  *Id.* at 1070.

### 3.    Actions of Sheriff Defendants

#### a.    Sergeant Noda

In support of qualified immunity, Defendants argue that Noda was experienced with TROs and that, based on his knowledge and experience, TROs are in effect through the hearing

on the permanent order.  (Mot. at 17; Defs.' Nos. 53 & 54.)[8]  Noda initially spoke to Castellanos, who had been present in the courtroom, about Plaintiff's statements at the April 5th Hearing.  (Defs.' No. 45 & 46.)  At the time Castellanos called Noda, Noda was already aware of a TRO in place to protect Jue from Plaintiff and that the parties were in court that day for a hearing on whether to issue a permanent restraining order.  (Defs.' Nos. 47 & 52.)  Noda went to Department 425 and also spoke with Libang about Plaintiff's statements, and with Jue about the incident in the cafeteria.  (Defs.' Nos. 48–50.)  The Court finds that by taking these steps, Noda did not solely rely on Jue's statement (as the protected party), but he independently investigated the basis of whether the TRO had been violated.[9]  *See Hopkins*, 573 F.3d at 767.  It is undisputed that Noda made the decision to arrest.  (Defs.' Nos. 55 & 56; Pl.'s Nos. 17 & 18.)

Plaintiff effectively argues that the Court may not consider any evidence other than the TRO itself in determining whether Noda, or any other Sheriff, had probable cause to arrest Plaintiff.   "The officers failed to find independent probable cause because they relied on an invalid TRO" and even assuming the initial arrest was valid, they "had a duty to immediately release [Plaintiff] upon reading the facially-invalid TRO."  (Opp. at 9; *see* Sur-Reply at 4.)  Plaintiff's bald reliance on the TRO fails for two reasons.  First, the probable cause analysis examines whether officers had "knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution" to believe an offense had been committed.  *Torres v. City of Los Angeles*, 548 F.3d at 1206.  Second, the analysis

---

[8] Plaintiff argues that Noda's statements regarding his experience with TROs are "self-serving" and not corroborated with evidence.  (*See* Plaintiff's response to Defs.' Nos. 53 & 54; Declaration of Gary Noda in Support of Defendants' Motion (Dkt. No. 90) ¶ 6.)  The Court notes that Plaintiff failed to take the deposition of any Defendant in this action, and Defendants' declarations are properly submitted as evidence on the pending motions.  *See Hart v. Parks*, 450 F.3d 1059, 1067 (9th Cir. 2006) ("[I]t is settled law that officers may draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person.") (internal citations and quotations omitted); *see also John v. City of El Monte*, 515 F.3d 936, 940 (9th Cir. 2007) (officer properly drew on experience and special training in evaluating witness' story).  Plaintiff has no competent evidence that disputes what Noda, or any other Defendant, knew about TROs based on their prior experiences.  (*See also* Defs.' No. 64 (Plaintiff admits he has no personal knowledge to dispute Noda's thoughts or observations).)

[9] Plaintiff objects to evidence that Noda sought clarification from Guandique and Judge Hitchens as irrelevant and hearsay, "except to confirm an admission that the TRO was at the very least ambiguous."  (Opp. at 17.)  The court considers these facts with respect to the effect on Noda's conduct and as evidence that he conducted an investigation into whether there was probable cause to arrest Plaintiff for violation of the TRO—not for the proposition that the TRO was still in effect.

takes into account the "totality of the circumstances" known to the arresting officers. *Peng*, 335 F.3d at 976. Limiting the inquiry to the four corners of the TRO ignores that the officers may have had other reasonably trustworthy information upon which to believe that an offense had been committed, and makes consideration of the "totality of the circumstances" impossible. Notably, Plaintiff cites no authority to support that the Court's inquiry must be limited to the protection order itself. Consequently, Plaintiff's reliance on *Beier* is misplaced to the extent he argues that reviewing the TRO prior to arrest[10] was a *prerequisite* for probable cause or for Noda to have acted reasonably.

The Court must consider the totality of the circumstances. The Court agrees with Defendants that, under these circumstances, a reasonable officer would have believed that the TRO would extend until April 5th and that the protection would not lapse before Judge Hitchens determined whether to issue a permanent order. First, page 3 of the TRO itself explicitly states the purpose of the April 5th Hearing was to "provide any legal reason that the orders above should not be *extended*." (TRO at 3 (emphasis supplied) (further including language that, at the hearing, "the court may extend or modify the orders for up to three years without further notice to [Plaintiff].").) In order to "extend" the TRO, the reasonable assumption is that it must still be in effect.[11] Second, the missing date on page one is not dispositive on a reasonable officer's understanding of the TRO's validity. Third, an objective analysis of the facts indicates that Noda, by seeking clarification from Judge Hitchens, attempted to obtain information about the TRO. *Beier*, 354 F.3d at 1069 ("A police officer who does not personally read such an order, for example, may fulfill his duty by obtaining information from

---

[10] The parties seem to dispute when Plaintiff was "arrested." (Sur-Reply at 7.) Plaintiff was not under arrest when he was told not to leave the courtroom. (Wasacz Decl. ¶ 7.c; Payne Decl. ¶ 7.) Plaintiff was, however, "arrested" when he was placed in handcuffs. (Defs.' No. 56.) It is undisputed that Noda had not yet reviewed the TRO at this time. (*See* Defs.' No. 61; Pl.'s No. 22.)

[11] Plaintiff's argument that a TRO must state the precise terms or is invalid, and his authorities on this point, are distinguishable. Importantly, Plaintiff's authorities do not address civil liability for false arrest or qualified immunity; these cases examined whether a restraining order had actually been violated. *See, e.g., Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers Local No. 70 of Alameda County*, 415 U.S. 423, 445 (1974) (holding that union could not be held in contempt of restraining order); *Brunton v. Superior Court*, 20 Cal. 2d 202, 205 & 208 (1942) (reversing order of contempt for violating terms of injunction); *People v. Gonzalez*, 12 Cal. 4th 804, 825 (1996) (addressing which court(s) had jurisdiction over challenge to the validity of the superior court injunctive order that was the basis of the charges of contempt). The case at hand is not determining whether Plaintiff actually violated the TRO, but whether the Defendants could have reasonably believed that he had violated the TRO such that there was probable cause for his arrest.

United States District Court

Northern District of California

1   authorized personnel—such as a supervisor or police dispatcher—who have access to the terms of the

2   order."). *Beier* is not contrary.  There, officers acted solely on the word of the protected party and no

3   "viable reading" of the order included the church as a protected area.[12]

4          Based on the totality of the circumstances of the April 5th Hearing, Plaintiff's statements on

5   the record during the hearing, and the fact that an independent investigation was conducted, a

6   reasonable officer with previous experience with TROs could have believed that Plaintiff violated the

7   TRO and there was thus probable cause to arrest Plaintiff.  The fact that Noda sought to clarify the

8   terms of the TRO from Judge Hitchens indicates that he conducted an investigation, not that he

9   believed the TRO was necessarily invalid.  The Court does not believe that a reasonable officer would

10  have believed that his conduct was unlawful or violated Plaintiff's constitutional rights in the situation

11  confronted by Noda.  In essence, Plaintiff asserts that he has a constitutional right to limit the duration

12  of the TRO to 15 days regardless of circumstances that created good cause to extend the TRO pending

13  the hearing.  No such right exists and the dispositive issue here is whether Noda reasonably believed

14  probable cause existed at the time of the arrest.  The TRO itself contained specific language from

15  which a reasonable officer could believe that it was in effect on April 5th, and thus there was probable

16  cause.

17         For these reasons, the Court finds that Sergeant Noda is entitled to qualified immunity for

18  Plaintiff's Section 1983 claim based on false arrest and imprisonment.

19

20

21

22  [12] Plaintiff's evidence includes the Reporter's Transcript of Proceedings on April 6, 2010 and minutes of the
    same proceedings in which the Court dismissed the charge against Plaintiff.  (Birkelund Decl., Exs. F & G

23  (Dkt. Nos. 98-6 & 98-7).)  Plaintiff argues that these documents may be considered to show that there are
    differing interpretations of the terms of the TRO.  (Sur-Reply at 8 n.4.)  Defendants object to these items under

24  FRE 401 and 402 on the ground that evidence of dismissal of criminal charges is not relevant to the false arrest
    claim and whether officers had probable cause to arrest Plaintiff.  The Court SUSTAINS Defendants' objection.

25  *Johnson*, 120 Cal. App. 4th at 456 ("[T]he existence of probable cause is 'to be decided in accordance with the
    circumstances at the time of the detention, unhampered by the outcome of the charge against the plaintiff of the

26  public offense or by the conclusions of the trial court. . . .'  Neither an acquittal nor the dismissal of the
    criminal charges collaterally estops defendants from asserting the lawfulness of plaintiff's arrest.") (internal

27  citations omitted); *see Hunter*, 502 U.S. at 228 (court should ask whether defendant "acted reasonably under
    settled law in the circumstances, not whether another reasonable, or more reasonable, interpretation of the

28  events can be construed . . . after the fact").

United States District Court
Northern District of California

#### b.     Senior Deputy Castellanos

Plaintiff's primary argument against qualified immunity for Castellanos mirrors that argued as to Noda—he initially concluded that the TRO had been violated without reviewing the TRO, and he failed to release Plaintiff after reviewing the TRO.  (Opp. at 15.)  Plaintiff also emphasizes that Castellanos thought that the terms of the TRO were ambiguous with regard to the expiration date.  (Pl.'s No. 24.)

Castellanos' sole role in the arrest is as follows: he was *present* in the courtroom during the April 5th Hearing and personally heard Plaintiff's statements made on the record about the cafeteria.  (Defs.' No. 45.)  He then spoke with Libang after the hearing, and she told him that the cafeteria encounter was a violation of the TRO.  (Pl.'s No. 13.)  Castellanos concluded that Plaintiff had violated the TRO based on his knowledge of TROs and what he had heard in court.  (Declaration of Luis Castellanos in Support of Defendants' Motion (Dkt. No. 86) ¶¶ 4–5.)  Castellanos then contacted Noda and notified him of the substance of Plaintiff's in-court statements and conduct in the courthouse cafeteria which violated the TRO.  (Pl.'s No. 14; *see* Defs.' No. 46.)  Castellanos informed Wasacz that Plaintiff was not to leave the courtroom until Jue left. (Pl.'s No. 15; Wasacz Decl. ¶ 7.c; Payne Decl. ¶ 17.)  Castellanos did not make the decision to arrest Plaintiff.

Castellanos' conduct in calling Noda to the courtroom may have initiated the events leading ultimately to Plaintiff's arrest, but Castellanos is entitled to qualified immunity for his actions.  A reasonable officer in Castellanos' shoes would not have understood that his conduct was either unlawful or violated Plaintiff's Fourth Amendment rights.  A deputy present at the April 5th Hearing and who was listening to the statements by the court, witnesses, parties, and/or attorneys would understand that the purpose of the hearing was to determine whether a three-year restraining order would be imposed to protect Jue from Plaintiff.  Plaintiff stated in court that he had been within a few feet of Jue earlier that day.  The court also chose to grant the three-year order of protection, which contributes to the reasonableness of his belief at that time.  From the totality of these circumstances, it was reasonable for a deputy familiar with TROs to conclude that Plaintiff had violated the TRO by his actions in the cafeteria.  It was further reasonable for Castellanos to have called Noda to report what

United States District Court
Northern District of California

1    he believed to be a TRO violation.  Whether Castellanos found the TRO terms ambiguous when he

2    did review the TRO is not material to the arrest as it was not his decision, but Noda's.

3         For the foregoing reasons, the Court finds that Senior Deputy Castellanos is entitled to

4    qualified immunity for Plaintiff's Section 1983 claim based on false arrest and imprisonment.

5              **c.    Deputies Neu, Tilton, and McConico**

6         With respect to Deputies Neu, Tilton, and McConico, Plaintiff argues they

7    "participated" in the arrest and his imprisonment.  (Opp. at 13; Sur-Reply at 9.)  Plaintiff further

8    argues that these Defendants also needed to determine independently that probable cause existed

9    before "participating" in his arrest.  (Opp. at 15.)

10        Defendants admit that Neu and Tilton assisted with Plaintiff's booking at Noda's direction.

11   (Defs.' No. 58; Pl.'s Nos. 26–27.)  McConico took Jue's citizen's arrest statement after Noda asked

12   him to do so.  (Defs.' Nos. 59–60; Pl.'s No. 28.)  Having merely assisted Noda and Castellanos,

13   Defendants argue this conduct was objectively reasonable, and thus Neu, Tilton, and McConico are

14   entitled to qualified immunity.  (Mot. at 18.)  Defendants argue they must be dismissed for the

15   additional reason that their participation did not involve the decision to arrest Plaintiff; they merely

16   assisted with matters "incidental" to the arrest.  (*Id.*; Reply at 11–12.)[13]

---

[13] As a preliminary matter, the Court **SUSTAINS** Defendants' objection to the Incident Report, attached as Ex. B to the Birkelund Decl. (Dkt. No. 98-2) and Ex. B2 to the Second Birkelund Decl. (Dkt. No. 105-1).  Plaintiff contends that the Incident Report falls under the public records exception to hearsay under Fed. R. Evid. 803(8) (Sur-Reply at 3 n.1), which is possible.  However, while Plaintiff's counsel states that the Incident Report was faxed from the San Francisco Public Defender's Office, no one with personal knowledge of the preparation of the document has authenticated *this* document.  (*See* Birkelund Decl. ¶ 3.)  Pl.'s Nos. 30 & 31 do not suffice, nor does Plaintiff's counsel provide sufficient authentication in the Second Birkelund Decl. ¶ 2.  Even if properly authenticated, the importance of the Incident Report to Plaintiff on the Motions seems to be the "police officer's statements and observations recorded in the report" and "[s]igned statements" of Libang and Jue "to show their complicity in the arrest."  (*Id.*)  The Court need not consider the Incident Report to determine the Defendants' involvement in Plaintiff's arrest.  The separate statements contain facts that the Court may consider—*many of which are undisputed*—and Defendants have submitted admissible declarations detailing their involvement.  Because the statements of Libang and Jue (attached to the Incident Report) are not material to summary judgment, the Court need not address Plaintiff's arguments that their signed statements are admissible as statements of a co-conspirator or of an opposing party under Fed. R. Evid. 801(d)(2)(E) and (d)(2)(A), respectively.  Finally, Plaintiff's reliance in his own declaration on the Incident Report as to Defendants' involvement (or as he calls it, "participation") in his arrest is not itself improper.  Plaintiff has identified the basis of his knowledge as the Incident Report and is permitted to make statements based on information and belief, which the Court recognizes is not personal knowledge.  (*See* Payne Decl. ¶ 16.)

United States District Court

Northern District of California

The Court agrees with Plaintiff that Neu, Tilton, and McConico "participated" on some level in the arrest of Plaintiff.  They admit as much in their declarations.  However, more than just "participation" is needed.  Rather, "integral participation . . . in the alleged constitutional violation" is required.  *Torres v. City of Los Angeles*, 548 F.3d at 1206 (internal citation omitted).  No one disputes that Noda made the decision to arrest.  (Defs.' Nos. 55 & 56.)  Plaintiff recalls only that one officer handcuffed him.  (Defs.' No. 72.)  It is also undisputed that Neu, Tilton, and McConico did not investigate the alleged TRO violation and did not play a role in Noda's *decision* to arrest Plaintiff.  (Defs.' Nos. 58 & 60; *see* Pl.'s Nos. 25 & 32.)  Plaintiff identifies no evidence to show that their roles consisted of anything more than following instructions from Noda or Castellanos.

Under the circumstances, these Defendants acted reasonably.  *Hopkins*, 573 F.3d at 769–70 (each defendant's liability must be based on his own conduct); *Cunningham*, 229 F.3d at 1287 (court must "examine[] each defendant's claim of qualified immunity on the basis of undisputed facts concerning the relevant specific conduct").  Neu acted in an objectively reasonable manner when he assisted with the arrest by escorting and transporting Plaintiff, after superior officers Noda and Castellanos notified him that Plaintiff was being arrested for violating the TRO.  (Declaration of Scott Neu in Support of Defendants' Motion (Dkt. No. 89) ¶¶ 3, 6 & 7.)  Tilton likewise acted in a reasonable manner by assisting and transporting Plaintiff after being notified that he violated the TRO.  (Declaration of Jason Tilton in Support of Defendants' Motion (Dkt. No. 91) ¶¶ 3 & 5.)  Such conduct cannot be said to consist of integral participation *in the alleged constitutional violation*.  As to McConico, merely interviewing a witness (without participating in the allegedly unconstitutional act of the arrest) is not enough to satisfy the "integral participant" rule.  *Hopkins*, 573 F.3d at 770.  Plaintiff cites no authority for the novel proposition that each of these Defendants must have determined independently that probable cause exists by reviewing the TRO, effectively duplicating the work of a superior officer.

For these reasons, Defendants Neu, Tilton, and McConico are entitled to qualified immunity for Plaintiff's Section 1983 claim based on false arrest and imprisonment.

#### 4.    Actions of Deputy City Attorney Libang

Defendants contend that Libang is entitled to qualified immunity based on many of the same arguments referenced above.  Based on her experience with TROs, Libang believed they remain in effect through the date of the hearing on the permanent order.  (Mot. at 16.)  In addition, nothing about the setting of the April 5th Hearing indicated that the court or the parties believed the TRO would lapse prior to April 5th.  (*Id.*)  Her actions in seeking Plaintiff's arrest, by speaking to Sheriff Defendants as part of the investigation into whether the TRO was violated, were thus reasonable.  (*Id.*)  Plaintiff counters that Libang is not entitled to qualified immunity because she acted "incompetently and egregiously" by seeking Plaintiff's arrest on a TRO for which she was responsible.  (Opp. at 16.)  Plaintiff blames Libang for the missing date in the TRO and its alleged subsequent invalidity.  (*Id.*)  Plaintiff also argues that Libang pursued a tardy arrest on the TRO.  (*Id.*)

First and foremost, Plaintiff has not identified how Libang's conduct violated a constitutional right.  The Court finds that an objectively reasonable attorney experienced with TROs would have believed that the TRO remained in effect.  (*See* Libang Decl. ¶ 9.)  It was reasonable, following the statements at the April 5th Hearing, for the attorney who obtained the TRO to speak to Sheriffs as part of the protected party seeking a citizen's arrest.  The reasonableness that the TRO was in effect is bolstered by the fact that Plaintiff's "advisory counsel" was present at the March 15th Hearing and *agreed* to the scheduling of the April 5th Hearing.  A reasonable reading of the TRO indicates that Plaintiff was deemed present at the time it was issued by virtue of his advisory attorney, and there is no dispute Wasacz agreed to the hearing date.  While Plaintiff may dispute Wasacz's role, the TRO stated: "Person to be restrained present.  No further service needed."  (TRO at Section 1.e.)  Plaintiff's dispute that *he* never agreed to the April 5th Hearing does not create a triable issue of fact regarding Libang's qualified immunity.  (*See* Defs.' No. 24.)[14]

---

[14] Plaintiff asserts that Wasacz did not have authority to acquiesce to any hearing date on his behalf.  Plaintiff also asserts that Wasacz never agreed to extend the expiration of the TRO to April 5th, nor did Wasacz advise Plaintiff that this had been done.  (Sur-Reply at 6 n.3; Payne Decl. ¶ 24.)  These arguments are immaterial to summary judgment on qualified immunity.  A reasonable attorney who had attended the March 15th Hearing, where advisory counsel for Plaintiff was present, would have believed that the TRO's terms would not lapse until the hearing occurred on April 5th.  Plaintiff has presented no evidence showing that this belief was unreasonable.  While Plaintiff asserts that Defendants have cited no legal authority allowing advisory counsel to bind a party who is responsible for representing himself, Wasacz stated on the record in the March 15th

The court initially attempted to schedule the hearing on April 1st (within 20 days of the issuance of the TRO). Wasacz did not object that good cause was lacking such that the TRO not be extended beyond the 15th day. When April 1st did not work, April 5th was chosen, which was the first business day available after the 20th day (April 4th).[15] Good cause for the extension is shown by the fact that April 5th was the earliest possible date available for all parties, including the court, and from the fact that the court ultimately did extend the TRO. To hold otherwise would potentially place individuals in significant danger of harm simply because the 20th day fell on a holiday before a judicial officer could conduct a full hearing on the necessity of extending the protection. Such protection can be especially important in the context of the volatile nature of custody battles. *Cf. In re Marriage of John and Sarah Trigger Cryer*, 198 Cal. App. 4th 1039, 1050 (Cal. Ct. App. 2011) (acknowledging trial court's perspective at the time of hearing that visitation and custody situation was potentially volatile).

The Court is not persuaded by Plaintiff's argument or authority that Libang and Jue (or any other Defendant) unreasonably delayed in seeking his arrest in violation of the "fresh pursuit" rule. (Opp. at 11–12 ("at least an hour passed before [Plaintiff] was arrested") & 16.) In *Jackson v. Superior Court*, 98 Cal. App. 2d 183, 185 (Cal. Ct. App. 1950)), the officer waited 28 hours to arrest a boy for events that the officer personally witnessed, which is distinguishable from the facts here. In *Hill v. Levy*, 117 Cal. App. 2d 667, 669 (Cal. Ct. App. 1953), the defendant failed to place plaintiff under arrest for approximately 30 minutes. The Court is not persuaded that *Hill* requires that Defendants be civilly liable under Section 1983 for an alleged violation of Plaintiff's constitutional rights. *Id.* at 671 ("The shortness of the time between the commission of the offense and the arrest is not the controlling factor in determining the lawfulness of the arrest. It is material only in

---

Hearing that Plaintiff was not present in the courtroom. (March 15th Tr. at 12.) A reasonable attorney would conclude that Wasacz would have conveyed the pertinent information regarding what transpired regarding the TRO to Plaintiff. The Court cannot speculate as to why Wasacz did or did not explain to Plaintiff the ramifications of the April 5th date, as the Wasacz Declaration does not address this issue.

[15] *See, e.g.*, Cal. Code Civ. Proc. section 12a ("If the last day for the performance of any act provided or required by law to be performed within a specified period of time is a holiday, then that period is hereby extended to and including the next day that is not a holiday."). Although the parties were not required to perform any "act" here, this section supports the general notion that court deadlines are routinely extended to the next business (court) day. This practice also bears on the objective reasonableness of Libang's belief.

United States District Court
Northern District of California

1    determining whether the arrest was made within a reasonable time and as soon as the circumstances

2    permitted.")  Plaintiff ignores that he made statements on the record during the April 5th Hearing

3    bearing on the reasonableness of Libang's belief that the TRO was violated.  The issue here is not

4    whether the arrest was valid; it is the objective reasonableness of the belief of someone in Libang's

5    position that is dispositive.  The Court finds it was objectively reasonable for Libang to have

6    proceeded with the court hearing and to act after Plaintiff himself described the cafeteria incident in

7    his cross-examination of Jue.

8          For these reasons, the Court finds that Libang is entitled to qualified immunity for Plaintiff's

9    Section 1983 claim based on false arrest and imprisonment.

10                    **3.      Actions of Case Worker Jue**

11         Defendants argue that Jue's conduct was reasonable from a "legal and [] human

12   perspective" in pursuing an arrest based on his belief that Plaintiff had violated the TRO.  (Mot. at

13   16.)  As a case worker in the Family Services Unit of the San Francisco Department of Human

14   Services, Jue had familiarity and experience with TROs.  (Mot. at 16; Jue Decl. ¶ 7.)  Based on his

15   experience, he understood that the TRO was still in effect on April 5th.  (Jue Decl. ¶ 7.)  Plaintiff

16   responds that Jue's conduct was unreasonable because he did not immediately contact law

17   enforcement to seek Plaintiff's arrest.  (Opp. at 16.)  Instead, he waited for the duration of the entire

18   hearing.  (*Id.*)  As a public official, Plaintiff contends that Jue was responsible for knowing the terms

19   of the TRO and that it was invalid.  (*Id.*)

20         As with Libang, Plaintiff has failed to identify the constitutional right that has been violated by

21   Jue's conduct.  The Court finds that Jue acted reasonably in filling out a citizen's arrest form and

22   requesting Plaintiff's arrest.  It is undisputed that Jue initially sought the TRO because of the

23   voicemails left by Plaintiff, which Jue perceived as threatening.  (*Id.*; Jue Decl. ¶¶ 3–4.)  When Jue

24   saw Plaintiff in the cafeteria on April 5th, it appeared to Jue that Plaintiff (who made eye contact with

25   Jue) knew Jue was there.  (*Id.* ¶ 5.)  According to Jue, Plaintiff "made no effort to leave the café to

26   comply with the stay-away provision of the TRO."  (*Id.*)  After leaving the cafeteria, Jue informed

27   Libang that Plaintiff had been in the cafeteria within him in violation of the TRO, as he understood

28   the terms of the TRO.  (*Id.*)  Having felt threatened by Plaintiff in the past, and having come to Court

United States District Court
Northern District of California

21

United States District Court

Northern District of California

on April 5th to determine whether a permanent order of protection would be ordered, Jue is entitled to qualified immunity based on a reasonable understanding that the TRO had not yet expired.  For the same reasons as noted above with Libang, waiting to request Plaintiff's arrest until after the April 5th Hearing does not change the Court's determination of the reasonableness of Jue's belief.

For these reasons, the Court finds that Jue is entitled to qualified immunity for Plaintiff's Section 1983 claim based on false arrest and imprisonment.

### III.   PLAINTIFF'S ARGUMENTS REGARDING CONSPIRACY AND MALICIOUSNESS

Plaintiff generally argues that "[t]he issue of qualified immunity [] turns on several questions of fact that must go before a jury."  (Opp. at 17.)  Plaintiff concludes that maliciousness is a question of fact, but has cited *no evidence* in support of maliciousness.  (*See* Opp. at 16 (arguing that Libang and Jue "conspired with maliciousness to arrest [Plaintiff] for improper purposes").)  Even in Plaintiff's Sur-Reply, the only argument raised is that maliciousness and conspiracy are "specifically alleged."  (Sur-Reply at 11.)

The conclusions of Plaintiff and his former advisory counsel that Defendants "collaborated" with each other and that Libang and Jue had "animosity, hostility, and dislike" for Plaintiff are insufficient to create a triable issue of fact.  *Nelson*, 83 F.3d at 1081–1082 (9th Cir. 1996) ("mere allegation and speculation do not create a factual dispute"); *Hansen v. United States*, 7 F.3d 137, 138 (9th Cir. 1993) ("When the nonmoving party relies only on its own affidavits to oppose summary judgment, it cannot rely on conclusory allegations unsupported by factual data to create an issue of material fact.").  (*See* Payne Decl. ¶ 19; Wasacz Decl. ¶¶ 6 & 8–9.)  Moreover, Plaintiff cannot sidestep the individual analyses of Defendants' actions at the summary judgment stage—and his failure to provide evidence—by merely *alleging* that they "collaborated" to arrest him.  *Hopkins*, 573 F.3d at 769–70.

**IV.     CONCLUSION**

For the foregoing reasons, the Court **GRANTS** Defendants' Motion for Partial Summary Judgment as to the first claim based on each Defendant's qualified immunity, and **DENIES** Plaintiff's Cross-Motion for Partial Summary Judgment in its entirety.

This Order terminates Dkt. No. 85.

**IT IS SO ORDERED.**

Dated: October 23, 2012

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**

United States District Court
Northern District of California